UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROXANNE DOYER, *pro se*, | ) |
| Plaintiff, | ) |
| v. | ) 2:14-CV-00025-JAW |
| RSU 16, *et al.*, | ) |
| Defendants. | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

This matter arises out of Plaintiff Roxanne Doyer's employment with Defendant Regional School Unit 16 (RSU 16). RSU 16 and its former superintendent, Defendant Dennis Duquette (Defendant Duquette), move for partial dismissal of Plaintiff's claims. The Court has subject matter jurisdiction based on the presence of federal claims.[1]

After a review of the pleadings, and based on the parties' arguments and the analysis offered below, it is recommended that the Court grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 4).[2]

---

[1] Plaintiff initially filed suit in Androscoggin County Superior Court in August 2013 and she referenced Title VII in her original complaint. Defendants did not remove the action until January 2014, shortly after Plaintiff filed an amended complaint. To the extent that Defendants' decision not to remove the case upon the filing of Plaintiff's original complaint generates a question about the Court's jurisdiction, because Plaintiff failed to request remand within 30 days of the removal, the Court has jurisdiction. 28 U.S.C. § 1447(c); *Fed. Nat'l Mortgage Ass'n v. Phomphakdy*, No. 4:13-CV-1369, 2014 WL 710443, at *2 (S.D. Tex. Feb. 19, 2014); *Nguyen v. Citi Residential Lending*, No. 2:12-CV-01375, 2012 WL 3561980, at *3 (E.D. Cal. Aug. 17, 2012) *report and recommendation adopted,* 2012 WL 4469341 (E.D. Cal. Sept. 26, 2012).

[2] The Court referred Defendants' Motion to Dismiss for report and recommendation pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND

The facts set forth herein are derived from Plaintiff's Amended Complaint, which facts are deemed true when evaluating the Motion to Dismiss.[3] The facts may also be informed by the many exhibits attached to Plaintiff's original complaint. *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) ("On a motion to dismiss, a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto[.]").

RSU 16 (formerly School Union 29) employed Plaintiff as an education technician III and communication aide between 2003 and 2009. During that time, Defendant Duquette was RSU 16's superintendent. (Am. Compl. ¶¶ 1-4.) RSU 16 employed Plaintiff to work with Plaintiff's disabled daughter, on a one-to-one basis, until the daughter attended high school. While Plaintiff was employed in the school, teachers in the school system and Plaintiff's supervisors consistently reviewed Plaintiff's performance positively. (*Id.* ¶¶ 13-15.) At the time that Plaintiff worked with her special needs daughter in the middle school, Plaintiff's two older daughters attended the RSU 16 high school. (*Id.* ¶ 16.)

At some point during her employment, Plaintiff became a vocal critic of the high school grading system and met with Defendant Duquette and the high school's principal to voice her concerns. (*Id.*) After a meeting on September 10, 2008, Defendant Duquette followed Plaintiff into the school parking lot, and told Plaintiff that if she valued her employment she should be careful. (*Id.*) The next day, Plaintiff forwarded Defendant Duquette a petition requesting that Defendant Duquette include the topic on the agenda for a public discussion. (*Id.* ¶ 17.) Defendant Duquette later questioned Plaintiff in the school setting as to whether she wanted to proceed with

---

[3] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

her request, blocked her passage through doorways, and displayed angry behavior toward her. (*Id.* ¶ 18.)

In October 2008, Defendant Duquette informed Plaintiff that she could no longer participate in the "Vision Keepers" program, described as a public forum meeting, at the high school. (*Id.* ¶¶ 19-20.) Plaintiff asserts that Defendant Duquette called her at home, harassed her at the school and at school committee meetings, and stopped her in school parking lots. Plaintiff sought assistance from the middle school principal, who stated that Defendant Duquette would no longer stop her during the work day. (*Id.* ¶¶ 21-23.) Defendant Duquette knew of the complaints that Plaintiff made to the middle school principal. (*Id.* ¶ 24.) On March 9, 2009, Plaintiff filed a complaint with the Maine Human Rights Commission, in which complaint Plaintiff alleged harassment, retaliation, and discrimination by Defendant Duquette. (*Id.* ¶ 25.)

On March 23, 2009, Plaintiff applied for a position as the high school's cheering coach. (*Id.* ¶ 26.) In response to the application, the high school athletic director informed Plaintiff in writing that someone else had the job. (*Id.* ¶ 27.) Plaintiff subsequently noted that the position was posted on two other occasions, in September and again in October. She pursued the job both times, but was told by the athletic director that the position was filled. (*Id.* ¶¶ 28-31.) In November 2009, Plaintiff raised the matter at a school committee meeting. Defendant Duquette, in an angry tone and with a red face, told Plaintiff that she would never work at the high school because she did not get along with the administrators. Plaintiff maintains that Defendant Duquette's statements are defamatory. (*Id.* ¶¶ 33-34.) Plaintiff also complains that her application letters—including the application for the cheering coach position and for an education technician position assigned to her daughter—and RSU 16's responsive correspondence declining to hire her were never placed in her employment file. (*Id.* ¶¶ 35-36.)

3

At a meeting in March 2010, Defendant Duquette informed Plaintiff that she would not be transitioning into the high school as an education technician, and that the decision had nothing to do with her work performance. Pressed by Plaintiff to state the reason for the decision, Defendant Duquette told Plaintiff that she would receive his explanation in writing, and declared the meeting closed. (*Id.* ¶¶ 42-43.) Plaintiff subsequently received a letter informing her that she would not continue as an education technician for her daughter, but she could apply if another education technician job opened. (*Id.* ¶ 44.) Plaintiff demanded reasons for the termination of her employment, and asserted her union rights to recall. In response, Defendant Duquette later informed Plaintiff that her employment was not terminated, and that she would receive an education technician assignment, but not a position in the high school. (*Id.* ¶¶ 45-46.)

In the summer of 2010, the anticipated high school special education program for Plaintiff's daughter was the subject of a due process hearing. At that hearing, Defendant Duquette described Plaintiff as a bully, difficult to work with, and "not a very nice person." (*Id.* ¶ 40.)

Plaintiff worked her last day as a RSU 16 employee in June 2010. In June, Plaintiff and her husband notified RSU 16 that they intended to pursue a claim against RSU 16 based on a brain injury an older daughter sustained during cheering practice. (*Id.* ¶ 51.) According to Plaintiff, when Plaintiff and her husband later asked RSU 16 for an accommodation for their daughter's brain injury, they "experienced retaliation and overt discrimination." (*Id.* ¶ 52.) In February 2011, Defendant Duquette advised Plaintiff and her husband that they could not observe a chorus class they were considering for their daughter. (*Id.* ¶ 53.) Another confrontation arose from this development at a March 2011 school committee meeting. During the meeting, Defendant Duquette referred to Plaintiff as a bully, very difficult to get along with, and not a very nice person. The School Board denied Plaintiff and her husband access to observe the chorus class. (*Id.* ¶ 54.)

On August 22 and August 28, 2010, the principal at the middle school offered Plaintiff an education technician II position, with less pay and less responsibility than her previous position. The offer required that Plaintiff submit a letter of resignation from her former education technician III position. Over the summer, RSU 16 posted and filled the remaining education technician III positions. (*Id.* ¶¶ 47-48.)

Plaintiff also complains that at a special education due process meeting later that summer, Defendant Duquette defamed her when he stated that he would not allow her to be employed at the high school because she is a bully, not a nice person, someone who engaged in "tactics" over the years, and a difficult employee. (*Id.* ¶ 40.)

On June 7, 2011, Plaintiff alleged retaliation and employment discrimination in a complaint filed with the Maine Human Rights Commission. (*Id.* ¶ 56.) On August 29, 2013, Plaintiff commenced this action in Androscoggin County Superior Court. (*Id.* ¶ 58.)

In her Amended Complaint, Plaintiff recites four counts: Title VII retaliation (Count I); Maine Human Rights Act retaliation (Count II); Maine Human Rights employment discrimination (Count III); and Title VII employment discrimination (Count IV). Additionally, within Count I and Count IV, Plaintiff alleges retaliatory treatment based on her exercise of First Amendment rights. (Am. Compl. ¶¶ 16, 45, 60, 78.) Plaintiff also alleges defamation. (*Id.* ¶¶ 34, 40, 54.)

## DISCUSSION

Defendants seek the dismissal of all of Plaintiff's claims with the exception of Plaintiff's First Amendment retaliation claim against RSU 16. (Motion to Dismiss at 2 n.1.) In support of their request for dismissal, Defendants argue that Plaintiff did not assert the claims timely, and that Plaintiff has not alleged a prima facie case of discrimination or retaliation based on her membership of a class protected under Title VII or the Maine Human Rights Act (MHRA). (*Id.*

at 2, *passim*.) Defendant Duquette also argues that all of Plaintiff's claims against him must be dismissed because he is sued only in an official capacity, because he is not individually liable in his role as supervisor, and because he has discretionary function immunity under the Maine Tort Claims Act. (*Id.* at 10-12.)

**A.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal if that party believes that the complaint fails "to state a claim upon which relief can be granted." In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir.2010)). To overcome Defendants' motion, therefore, Plaintiff must establish that her allegations raise a plausible basis for a fact finder to conclude that Defendants are legally responsible for Plaintiff's claims. *Id.* Because Plaintiff is a *pro se* litigant, the Court will review her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**B.     Employment Discrimination and Retaliation**

*1.     Timeliness of the Title VII and MHRA Claims*

Defendants contend that because Plaintiff first filed an "accepted" administrative charge with the Maine Human Rights Commission (MHRC) on June 7, 2011, Plaintiff is barred from seeking relief for incidents that occurred prior to August 11, 2010. (Motion to Dismiss at 6, citing Am. Compl. ¶ 56.) Plaintiff maintains that her claims are not barred because she previously (March 9, 2009) filed a complaint with the MHRC and because her subsequent filing was for "ongoing" harassment and retaliation. (Plaintiff's Opposition at 2, ECF No. 8.)

Title VII requires that individuals complaining of discrimination file an administrative complaint before pursuing litigation in court. Under Title VII, Maine is a "deferral state," which means that complainants may pursue their administrative complaints of discrimination with the local state agency (in Maine, the MHRC), rather than with the federal Equal Employment Opportunity Commission. *Perkins v. Champion Intern. Corp.,* No. 1:95-cv-00249, 1997 WL 97106, at *1 (D. Me. Feb. 24, 1997); 42 U.S.C. § 2000e-5(e)(1). Under federal law, a person must file a complaint within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1). The MHRA imposes the same 300-day administrative exhaustion requirement, except that failure to comply with the exhaustion requirement does not preclude a civil action under the MHRA. Instead, the failure to exhaust the state court administrative proceedings precludes a party from obtaining certain remedies. 5 M.R.S. §§ 4611, 4622(1). In addition to the administrative filing requirements, a plaintiff must file court action "not more than two years after the act of unlawful discrimination complained of," unless the MHRC takes certain action to extend the time period. 5 M.R.S. §§ 4613(2)(C), 4622(1)(A)-(D).

In this case, at least some of the actions about which Plaintiff complains occurred within 300 days before she filed her complaint with the MHRC on June 7, 2011. Similarly, Plaintiff initiated this action within two years after some of the alleged unlawful discrimination. In particular, Plaintiff filed suit on August 29, 2013, which, at a minimum, would permit her to pursue claims for unlawful discrimination occurring on or after August 28, 2011.[4] *See* Fed. R. Civ. P. 6(a)(1). Although it appears from the Amended Complaint that Plaintiff's employment with RSU 16 might have terminated prior to August 28, 2011, the August 28, 2011, letter asking Plaintiff for her resignation could be construed as the last temporal occurrence in Plaintiff's discrimination

---

[4] Plaintiff could possibly derive some benefit from earlier acts if the acts relate to a pattern of systemic, ongoing harassment. *See Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 438 (1st Cir. 1997).

claims.[5] Defendants, therefore, are not entitled to dismissal based on the timing of Plaintiff's administrative filing or the timing of her commencement of this action.

   2.   *Absence of Protected Status under Title VII and the MHRA*

Defendants argue that Plaintiff does not allege conduct that violates either Title VII or the MHRA. Both statutes protect against discrimination or harassment when the alleged unlawful conduct is based on an employee or applicant's membership of a protected class. Under Title VII, the protected classes are "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a). For MHRA purposes, the protected classes are "race, color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin." 5 M.R.S. §§ 4571, 4572(1)(A).[6]

Plaintiff's Amended Complaint cannot reasonably be construed to allege that Defendants took adverse action regarding Plaintiff's employment as the result of Plaintiff's race, color, sex, disability, or other protected status. Plaintiff's Amended Complaint, therefore, fails to state a claim of employment discrimination or employment retaliation under both Title VII or the MHRA.

   3.   *Supervisor liability*

As Defendants argue (Defendants' Motion to Dismiss at 10-11), Defendant Duquette is entitled to the dismissal of both the Title VII and the MHRA claims against him, individually, because neither Title VII, nor the Maine Human Rights Act, authorizes individual liability. *Fantini v. Salem State Coll.*, 57 F.3d 22, 30 (1st Cir. 2009); *Fuhrmann v. Staples Office Superstore E., Inc.*, 2012 ME 135, ¶ 35, 58 A.3d 1083, 1098.

**C.   The Constitutional Claims**

   1.   *42 U.S.C. § 1983 and the First Amendment*

---

[5] Plaintiff cites section 1983, which is not an employment discrimination statute and has a different limitation period. (Plaintiff's Opposition at 1-2.) Section 1983 pertains to Plaintiff's First Amendment claim, which Defendants do not challenge in their Motion to Dismiss. Section 1983 does not prescribe a statute of limitation for Title VII claims.
[6] Although whistleblower status can also serve under the MHRA, Plaintiff does not assert a whistleblower claim.

Defendants concede that Plaintiff has alleged a First Amendment retaliation claim. (*Id.* at 2 n.1.) Defendants, however, evidently contend that Defendant Duquette is not a proper defendant on the claim. Contrary to Defendants' contention, as this Court recently observed, a First Amendment constitutional claim is actionable against both school districts and school officials.

> Section 1983 provides a cause of action to individuals who are "depriv[ed]" of "any rights, privileges, or immunities secured by the Constitution or U.S. law" by a "person" acting "under color of" state law. 42 U.S.C. § 1983.
>
> State actors, including both school districts and individual school officials, "offend the First Amendment when they retaliate against an individual for constitutionally protected speech."

*Pollack v. Reg'l Sch. Unit 75*, No. 2:13-CV-00109-NT, 2014 WL 1321118, at *8-9 (D. Me. Mar. 31, 2014).

Defendants nevertheless argue that Plaintiff's claim against Defendant Duquette is "redundant" because Plaintiff's claim is an official capacity claim and Plaintiff has asserted a separate claim against RSU 16. (Defendants' Motion to Dismiss at 11, citing *Trafford v. City of Westbrook*, 256 F.R.D. 31, 33 (D. Me. 2009).) At this stage of the proceedings, however, one can fairly construe Plaintiff's Amended Complaint as asserting a personal capacity section 1983 claim against Defendant Duquette. Additionally, Plaintiff's supervisory liability theory (see Plaintiff's Opposition at 6) could prove to be distinct from her claim against RSU 16.

    *2.    5 M.R.S. § 4682 and the Maine Constitution*

Although the MHRA authorizes a private cause of action based on the interference with the exercise of one's state constitutional rights, 5 M.R.S. § 4682(1-A), such a claim must involve "physical force or violence against a person, damage or destruction of property or trespass on property[,]or . . . threat of physical force or violence against a person, damage or destruction of property or trespass on property." *Id. See also Andrews v. Dep't of Envtl. Prot.*, 1998 ME 198, ¶

23, 716 A.2d 212, 220 ("declin[ing] to expand the available remedies for a violation of rights guaranteed by the Maine Constitution beyond those which the Legislature in its wisdom has provided"). In the Amended Complaint, Plaintiff does not allege the use of, or the threat to use, force. Plaintiff thus has failed to assert a claim for a retaliatory violation of Article 1, Section 4 of the Maine Constitution.

**D.    The Maine Tort Claims Act**

Defendants argue that to the extent Plaintiff states a claim under state law, Plaintiff's claim is barred because Defendant Duquette has immunity under the Maine Tort Claims Act (MTCA). (Defendants' Motion to Dismiss at 12.) Plaintiff's Amended Complaint does not set forth a separate count for defamation, but Plaintiff alleges that Defendant Duquette made defamatory statements about her. (Am. Compl. ¶¶ 34, 40, 54.) Plaintiff's allegation is sufficient to raise a claim of defamation.

"The MTCA provides governmental employees with immunity from personal liability when performing discretionary functions or duties." *Morgan v. Kooistra*, 2008 ME 26, ¶ 20, 941 A.2d 447, 453 (citing 14 M.R.S. § 8111(1)(C)). To determine whether a governmental employee's performance of a particular function or duty was discretionary in nature, the Maine Law Court applies a four-part test. *Id.*[7] Simply stated, the pleadings at this stage of the proceedings do not

---

[7] In *Morgan*, the Maine Law Court outlined the following test: "(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?" 2009 ME 26, ¶ 20; 941 A.2d at 453.

include facts upon which the Court could conclude that discretionary immunity applies to bar Plaintiff's defamation claim.[8]

## CONCLUSION

Plaintiff's Amended Complaint fails to state a claim for which relief can be granted except to the extent that it asserts (1) a claim of First Amendment retaliation in violation of 42 U.S.C. § 1983 and (2) a claim of defamation. Accordingly, based on the foregoing analysis, the recommendation is that the Court dismiss all claims asserted in Plaintiff's Amended Complaint except (1) Plaintiff's claim of First Amendment retaliation in violation of 42 U.S.C. § 1983, and (2) Plaintiff's claim of defamation.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 23, 2014

---

[8] In most instances, the parties will have to develop an evidentiary record in order for a court to determine whether a certain act satisfies the four-part test. Not surprisingly, therefore, Defendants did not address the four-part test in their motion to dismiss.